United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Gary M. Andres Sr., Executor of the Estate for John R. Andres, Plaintiff, <br><br> v. <br><br> Raytheon Technologies Corp. and others, Defendants. | ) ) ) ) ) ) ) ) ) ) Civil Action No. 21-61757-Civ-Scola |

### Order

This matter is before the Court on Defendant Huntsman Corp.'s motion to dismiss the Plaintiff's second amended complaint pursuant to Fed. R. Civ. P. 12(b)(2). (ECF No. 364.) The Plaintiff filed a response to the motion (ECF No. 379), and Huntsman filed a reply in support of the motion (ECF No. 384). After careful consideration of the briefs and the relevant legal authorities, the Court **grants** the motion. (**ECF No. 364**.)

1. **Background**

On July 13, 2020, John R. Andres was diagnosed with malignant mesothelioma. (ECF No. 320 at ¶ 2.) One month later, Mr. Andres passed away. (*Id.*) The Plaintiff—Mr. Andres's surviving son—now sues fifty-one Defendants, alleging that over the course of approximately forty years, Mr. Andres came into contact with, and at times handled, numerous products and components that contained asbestos. (*Id.* at ¶¶ 12–17.) The Plaintiff alleges that these products and components, which were "manufactured, sold, distributed, supplied, used, and/or installed by Defendants," caused Mr. Andres to contract mesothelioma and die. (*See id.* at ¶¶ 10–20.)

Relevant to this motion, the Plaintiff alleged that Huntsman is subject to jurisdiction in Florida. While the complaint makes no specific allegations concerning Huntsman's business or conduct, the Plaintiff pled jurisdictional allegations common to all Defendants. For example, the Plaintiff alleges that Huntsman and the Defendants are "either Florida corporations or foreign corporations that no conduct or have conducted business or business ventures, or have had offices or agencies with Florida[.]" (*Id.* at ¶ 4.) The Plaintiff further alleges that this case arises out of "the business or business ventures conducted within Florida by each of the Defendants or through which the Defendants purposefully directed themselves at Florida or otherwise could reasonably have foreseen that their activities would subject them to jurisdiction

of the Florida courts." (*Id.*) The Plaintiff concludes that the Defendants are "amenable to jurisdiction in the Courts of Florida for numerous reasons, including, but not limited to" fourteen listed reasons, which are largely legal conclusions. (*Id.* at ¶ 6.)

In connection with its motion to dismiss, Huntsman's assistant treasurer, Joe Hambor, filed a declaration. (ECF No. 364-1.) The Hambor Declaration states that Huntsman is only a holding company, incorporated in Delaware and with a principal place of business in Texas, that does not engage in business in Florida. (*Id.*)

In response, the Plaintiff augments the allegations in its complaint. The Plaintiff argues that Huntsman is subject to personal jurisdiction as Huntsman conducts business in Florida and targets the sale of products in Florida. (ECF No. 379.) In particular, the Plaintiff argues that Huntsman owns or operates a physical facility in Pensacola, where Huntsman allegedly produces maleic anhydride, and that Huntsman owns the trademarks to two products that were sold in Florida and potentially contributed to Mr. Andres's exposure to asbestos. (ECF No. 379 at 13–16.)

## 2. Legal Standard

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). A defendant challenging personal jurisdiction must present evidence to counter the plaintiff's allegations. *See Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009) (noting that the defendant must "raise[], through affidavits, documents or testimony, a meritorious challenge to personal jurisdiction"). Once the defendant has presented sufficient evidence, "the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." *See id.*

If the plaintiff sufficiently alleges jurisdiction, a district court applies a two-part analysis to determine whether it has personal jurisdiction over a non-resident defendant. *See Sculptchair, Inc. v. Century Arts Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). First, a district court must determine whether the applicable state's long-arm statute provides a basis for personal jurisdiction. *See id.* Second, if so, then the district court turns to whether sufficient minimum contacts exist between the defendant and the forum state "so as to satisfy traditional notions of fair play and substantial justice under the Due Process

Clause of the Fourteenth Amendment." *Id.* (internal quotation marks and citations omitted).

### 3. Analysis

"It is no small thing to file a lawsuit that brings someone involuntarily into federal court." *In re Zantac (Ranitidine Prods. Liab. Litig.*, 20-MD-2924, 2020 WL 6907056, at *1 (S.D. Fla. Nov. 24, 2020) (Reinhart, M.J.). For that reason, defendants have a well-established "liberty interest" in not being subject to process and binding judgments in a forum where they have no meaningful ties. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471 (1985).

Here, Huntsman argues that it is merely a holding company and conducts no business in Florida, and it contends that (1) the Plaintiff has not sufficiently alleged a *prima facie* case of personal jurisdiction, (2) it is not subject to Florida's long-arm statute, and (3) it lacks sufficient minimum contacts such that personal jurisdiction would not comport with due process. (ECF No. 364.) The Plaintiff counters by arguing that its allegations suffice and that Huntsman produces goods in, and targets the market of, Florida. In the alternative, the Plaintiff asks for jurisdictional discovery to assess whether jurisdiction is proper. The Court will address each of the parties' arguments as needed.

### A. Prima Facie Case

The Court finds that the Plaintiff has not alleged a *prima facie* case of personal jurisdiction over Huntsman. As stated above, "[a] plaintiff seeking to establish personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1351 (11th Cir. 2013). Where a complaint lacks jurisdictional allegations to sufficiently establish a *prima facie* case, "the district court doesn't go to the second and third steps of the burden-shifting process, and the motion [to dismiss] should be granted." *Diulus v. Am. Express Travel Related Servs. Co., Inc.*, 823 F. App'x 843, 849 (11th Cir. 2020); *Fox v. Loews Corp.*, 309 F. Supp. 3d 1241, 1246 (S.D. Fla. 2018) (dismissing two defendants as the complaint did not contain sufficient *prima facie* jurisdictional allegations).

Here, the second amended complaint contains no specific jurisdictional allegations against Huntsman. Rather, the Plaintiff lumps Huntsman together with fifty other Defendants when pleading jurisdictional allegations, asserting that each Defendant is properly before the Court and reciting fourteen conclusory reasons in support. (ECF No. 320 at ¶ 6.) But nowhere in the operative complaint does the Plaintiff allege facts that Huntsman itself is

subject to personal jurisdiction and why. This is not sufficient. *See Flava Works, Inc. v. Roje on Holiday Inc.*, No. 1:10-cv-23834, 2012 WL 1535684, at *5 (S.D. Fla. May 1, 2012) (Seitz, J.) (holding that a plaintiff may not "indiscriminately lump[] all of Defendants" in jurisdictional allegations and that a plaintiff "must establish personal jurisdiction over each individual Defendant based on that Defendant's activities in and contacts with Florida"); *see also In re Zantac*, 2020 WL 6907056, at *4 (holding that generalized jurisdictional allegations that are "non-specific statements providing 'labels and conclusions' or 'a formulaic recitation of the elements of [jurisdiction]' . . . 'do not establish a *prima facie* case of personal jurisdiction'").

Therefore, the Plaintiff has not established a *prima facie* case of personal jurisdiction over Huntsman, and the case should be dismissed. *See Diulus*, 823 F. App'x at 849.

Even if the Court held that the Plaintiff met its *prima facie* burden, dismissal would still be appropriate, as Huntsman presented evidence to rebut the jurisdictional allegations and the Plaintiff failed to "prove jurisdiction by affidavits, testimony or documents." *See Internet Sols.*, 557 F.3d at 1295. The Hambor Declaration states that Huntsman is a holding company with no activities in Florida. (ECF No. 364-1.) In response, the Plaintiff contends that the Hambor Declaration is false and argues that Huntsman owns or operates a facility near Pensacola and owns two trademarks—Epocast and Epibond—used in products that may have exposed Mr. Andres to asbestos.[1] (ECF No. 379 at 13–14.) However, the documents to which the Plaintiff cite do not show that Huntsman owns this property. Rather, these documents show that Huntsman's subsidiaries, and not Huntsman itself, own the trademarks at issue. (ECF Nos. 379-8, 379-9 (showing that the trademarks Epocast and Epibond are owned by Huntsman Advanced Materials Americas LLC).) Moreover, the Plaintiff did not produce evidence that Huntsman, as opposed to its subsidiaries, owned the Pensacola facility. (ECF No. 379-2 at 5 (Huntsman's 2010 Form 10-K, stating that the Form 10-K provides information on Huntsman and "its subsidiaries and predecessors").) Therefore, the Plaintiff failed to rebut the Hambor Declaration and prove that Huntsman is subject to personal jurisdiction in Florida.

---

[1] The Plaintiff's operative complaint has no allegations concerning the Pensacola facility and the Epocast and Epibond trademarks. Therefore, the Court did not consider such arguments when determining whether the Plaintiff adequately pled an initial *prima facie* case of personal jurisdiction. *See generally Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.2d 1276, 1284 (11th Cir. 2007) (noting that courts "do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss").

### B. Jurisdictional Discovery

Last, the Court holds that no jurisdictional discovery is required. In recognition that plaintiffs may not always have knowledge of sufficient jurisdictional facts at the initial pleadings, limited discovery may be permitted where jurisdictional facts are "genuinely in dispute." *See Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 & n.7 (11th Cir. 1982); *see also In re Zantac*, 2020 WL 6907056, at *2 ("[T]he parties have a qualified right to jurisdictional discovery to develop the factual record, if they make a timely request and jurisdictional facts are genuinely in dispute."). However, jurisdictional discovery is not warranted "solely to remedy a lack of jurisdictional facts[.]" *In re Zantac*, 2020 WL 6907056, at *3.

Here, the Court holds that the jurisdictional facts are not genuinely in dispute. The Hambor Declaration establishes that Huntsman is a foreign holding company, and the Plaintiff's only response is to try to hold Huntsman responsible for its subsidiaries' activities in Florida. But this does not suffice to establish personal jurisdiction or to create a genuine dispute of jurisdictional facts. *See Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002) ("Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there."); *cf. Unijax, Inc. v. Factory Ins. Ass'n*, 328 So.2d 448, 453-54 (Fla. 1st DCA 1976) (noting that "courts have uniformly held that a parent company is not liable for the torts of its subsidiaries").

This rule is subject to an exception though. Courts will find personal jurisdiction appropriate where a parent entity "exercises operational control" over its subsidiary or otherwise operates the subsidiary as a "mere instrumentality" of the parent. *See id.*; *Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1241 (S.D. Fla. 2015) (Altonaga, J.). But the Plaintiff has not argued that this exception applies or that any alter ego relationship between Huntsman and its subsidiaries exists.

Therefore, the only dispute is a legal dispute—whether Huntsman can be subject to personal jurisdiction in Florida because of the activities of its subsidiaries. As the Plaintiff has not argued any theory under which Huntsman could be so liable, personal jurisdiction cannot lie.

### 4. Conclusion

For the reasons set out above, the Court **grants** the motion. (**ECF No. 364**.) As the Plaintiff has not requested leave to amend, the Court dismisses the second amended complaint as to Huntsman without leave to amend.

**Done and ordered**, in Miami, Florida, on April 4, 2022.

_____
Robert N. Scola, Jr.
United States District Judge